IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHELLE DUNCAN-BOGLEY          *

                                *
    Plaintiff,
                                *
    v.                                    CIVIL NO. JKB-16-1137
                                *

UNITED STATES OF                *
AMERICA, et al.
                                *

    Defendants.                 *

*   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM

Michelle Duncan-Bogley ("Plaintiff") brought this negligence action against the United States ("the Postal Service") and SDC New Ridge Parkway and Benson Avenue – Maryland, Inc., ("SDC") (collectively "Defendants") after she fell outside of the U.S. Post Office in Hanover, Maryland. Now pending before the Court are SDC's Motion for Summary Judgment and the Postal Service's Motion to Dismiss for Failure to State a Claim or, in the Alternative, for Summary Judgment, filed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56. (ECF Nos. 43, 44.) The issues have been briefed (ECF Nos. 43-1, 44-1, 45-1, 46-1, 51, 52), and no hearing is required, *see* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, the Motions will be reviewed under Rule 56 and will be granted.

## I. *Factual and Procedural Background*[1]

On July 18, 2013, Plaintiff went to the U.S. Post Office in Hanover, Maryland. (USA M.S.J. Ex. I at 20:9-26:5, ECF No. 44-11; Ex. J at 5-6, ECF No. 44-12.) It was mid-morning and

---

[1] As the non-movant on the motions for summary judgment, the facts are recited here in the light most favorable to the Plaintiff. *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018).

sunny. (USA M.S.J. Ex. I at 20:9-20:11, 26:4-26:5, ECF No. 44-11.) She retrieved mail from her business' P.O. Box and then went to exit the office. (*Id.* at 20:12-21:21.) As Plaintiff was leaving, a man opened the door for her. (*Id.* at 33:21-34:11.) Then, when she exited the threshold, her left foot landed on the uneven intersection of two concrete slabs outside of the Post Office, causing her to trip and sustain injuries. (*Id.*; *see also* USA M.S.J. Ex. J at 5-7, ECF No. 44-12.)

The parties' experts agree that the difference in height between the concrete slabs where Plaintiff's foot landed was approximately three quarters of an inch. (*See* SDC M.S.J. Ex. D, ECF No. 43-5; Opp'n to SDC M.S.J. Ex. 3 at 75:12-76:13, ECF No. 46-2.) Plaintiff was not looking down when she exited the Post Office; she was "more paying attention to the man opening the door." (USA M.S.J. Ex. I at 34:16-37:11, 170:15-170:19, ECF No. 44-11.) She acknowledged that, if she had been looking down, she would have seen the uneven intersection of the two pieces of sidewalk. (*Id.* at 34:16-37:11.) There was nothing obstructing Plaintiff's view of the sidewalk. (*Id.* at 39:7-39:17.) There have been no known similar incidents in recent years. (SDC M.S.J. Ex. G at 252:20-254:5, ECF No. 43-8.)

Plaintiff had visited the U.S. Post Office in Hanover several times before July 18, 2013. (USA M.S.J. Ex. I at 159:4-159:15, ECF No. 44-11.) She never noticed the uneven sidewalk on her prior visits, despite the fact that it is immediately in front of the entrance to the Post Office. (*Id.* at 46:19-47:3, 159:16-159:20; ECF No. 44-11 at 16.) By contrast, two of Plaintiff's employees, Karen Stelmack and Kim Goins, both stated in their depositions that they observed the sidewalk defect during their prior visits to this Post Office. (USA M.S.J. Ex. N at 13:2-13:22, ECF No. 44-16; Ex. O at 11:13-19:20, ECF No. 44-17.) Indeed, Stelmack even stated that she was able to observe the "difference in level" in the sidewalk when she exited the Post Office. (USA M.S.J. Ex. O at 19:4-19:20, ECF No. 44-17.) Stelmack believes that the sidewalk defect has been there

2

"for a long time." (*Id.* at 11:13-12:1.) Similarly, Goins stated that she noticed the "crack" on her first visit to the U.S. Post Office in Hanover "a couple years ago." (USA M.S.J. Ex. N at 13:7-13:22, ECF No. 44-16.)

The Postal Service leases a single suite within a commercial strip located at 7476 New Ridge Road in Hanover, Maryland. (USA M.S.J. Ex. A at 43:2-44:1, ECF No. 44-3.) The commercial strip is owned by SDC. (*See* USA M.S.J. Ex. C, ECF No. 44-5.) The Postal Service does not lease the sidewalk in front of its office from SDC. (*See* USA M.S.J. Ex. A at 33:4-35:11, ECF No. 44-3; Ex. C, ECF No. 44-5; Ex. D, ECF No. 44-6.) Rather, the sidewalk is a common area retained by SDC that stretches in front of the other businesses and properties in SDC's commercial strip. (USA M.S.J. Ex. A at 29:14-42:11, 91:14-91:18, ECF No. 44-3.) SDC's former property manager stated in her deposition that there were "maybe six or seven" tenants in the strip. (USA M.S.J. Ex. B at 54:20-55:15, ECF No. 44-4.) Under the express terms of the lease between the Postal Service and SDC, SDC is responsible for "repairs to all common or joint use areas," and, specifically, "repairs to sidewalk." (USA M.S.J. Ex. C, ECF No. 44-5.) The Postal Service, along with the other tenants in SDC's commercial strip, paid a common area maintenance fee with which SDC, through a property manager, maintained the exterior of its commercial strip. (USA M.S.J. Ex. A at 38:1-42:11, ECF No. 44-3.)

On April 15, 2016, Plaintiff and her husband, James Bogley, filed the instant suit against Defendants for negligence and loss of consortium. (ECF No. 1.) They filed suit against the Postal Service pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680 (2012). The Court dismissed their loss of consortium claim for failure to exhaust administrative remedies as required under the Federal Tort Claims Act and, therefore, dismissed James Bogley from the case. (ECF No. 20.) The parties then conducted discovery and Defendants filed the pending Motions.

(ECF Nos. 43, 44.) Plaintiff opposed both Motions (ECF Nos. 45, 46), and Defendants replied (ECF Nos. 51, 52).

## *II. Legal Standard*

The Postal Service moves for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56, in support of which it proffers several exhibits. "A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure," *Sager v. Hous. Comm'n*, 855 F. Supp. 2d 524, 542 (D. Md. 2012), which provides that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to *and not excluded by* the court, the motion must be treated as one for summary judgment under Rule 56," Fed. R. Civ. P. 12(d) (emphasis added). Where, as here, the parties have had the opportunity to undertake discovery, the Court will construe the Postal Service's motion as one for summary judgment. *Cf. Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) ("Generally speaking, 'summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'") (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then the dispute is material and genuine, and summary judgment should be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "courts must view the

4

evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018).

## *III. Analysis*

Plaintiff's sole cause of action is negligence based on premises liability, and to prevail she must demonstrate that: (1) Defendants owed Plaintiff a duty to protect her from injury; (2) Defendants breached that duty; (3) Plaintiff suffered actual injury or loss; and (4) Plaintiff's injury or loss proximately resulted from the Defendants' breach of duty.[2] *Rosenblatt v. Exxon Co., U.S.A.*, 642 A.2d 180, 188 (Md. 1994).

### *a. Existence of a Duty*

A duty is defined as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Hemmings v. Pelham Wood LLLP*, 826 A.2d 443, 451 (Md. 2003) (citations omitted). Whether a duty is owed is a legal determination, "ordinarily for the court rather than the jury to decide." *Id.* (quoting W. Page Keeton, et al., *Prosser & Keeton on Torts* § 37, at 236 (5th ed., 1984)).

Plaintiff argues that, as an invitee, Defendants had a duty to protect her from the unreasonable risk posed by the uneven sidewalk. (Opp'n to USA M.S.J. at 5-12, ECF No. 45-1; Opp'n to SDC M.S.J. at 6, ECF No. 46-1.) "An invitee is in general a person invited or permitted to enter or remain on another's property for purposes connected with or related to the owner's business." *Sherman v. Suburban Trust Co.*, 384 A.2d 76, 79 (Md. 1978). SDC does not dispute that it owed Plaintiff a duty because she was on its premises for purposes related to its tenant's

---

[2] Under the Federal Tort Claims Act, the United States can only be held liable in tort where a private person or entity would be liable under the law of the place where the incident happened. 28 U.S.C. § 1346(b). *See also Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001). Because the incident occurred in Maryland, Maryland law applies.

5

business at the time of the incident. (*See* SDC M.S.J. Mem. Supp. at 11, ECF No. 43-1.) The Postal Service, on the other hand, argues that summary judgment should be granted in its favor because it did not own, lease, or control the sidewalk area where Plaintiff fell and, therefore, did not owe Plaintiff a duty with respect to that area. (USA M.S.J. Mem. Supp. at 11-12, ECF No. 44-1.) The Court will address this argument and then turn to the parties' alternative arguments for summary judgment.

Maryland courts have never specifically addressed the issue presented here—whether a tenant in a multi-tenant commercial strip owes a duty to invitees with respect to the common areas abutting its premises. However, in negligence actions based on premises liability, Maryland courts have held that the duty owed by an owner or occupier of a premises generally does not extend to areas outside of its control. *See Leatherwood Motor Coach Tours Corp. v. Nathan*, 579 A.2d 797, 802 (Md. Ct. Spec. App. 1990) ("The duty to an invitee is imposed on owners, tenants, and occupiers of land, those having *sufficient possession and control* to be answerable to others for its condition.") (emphasis added); *see also Barnett v. United States*, 193 F. Supp. 3d 515, 521 (D. Md. 2016) (dismissing claim against the United States for injuries on an "uneven public sidewalk" that was adjacent to a Government-owned parking lot because plaintiff failed to allege any plausible scenario under which the "Government is or may be responsible for his injury"); *Matyas v. Suburban Trust Co.*, 263 A.2d 16, 18 (Md. 1970) (holding that the tenant owed no duty to invitees to remove snow and ice from the public sidewalk abutting its premises). Thus, in the landlord-tenant context, tenants ordinarily do not have a duty to maintain the common areas retained by the landlord. *See Matthews v. Amberwood Assoc.*, 719 A.2d 119, 123–25 (Md. 1998); *Parks v. Dingus*, Civ. No. JRH-94-2997, 1995 WL 167928, at *2 (D. Md. Apr. 5, 1995) ("The parties do not dispute that the stairway, the area where Plaintiff's accident occurred, is a common

6

area. Therefore, under the terms of his lease, [the tenant] does not control the area where Plaintiff fell. His lack of authority over the area relieves him from liability for any injuries sustained by her as a result of her fall.").

The only recognized exception to this "control requirement" in Maryland is the "special use" doctrine, which has been applied to impose liability on an owner or occupier of a premises who makes some "special use" of an abutting public walkway and thereby creates a hazard on it. *See Bethesda Armature Co., Inc. v. Sullivan*, 424 A.2d 397, 399–400 (Md. Ct. Spec. App. 1981). Cases applying the doctrine have typically involved situations where the owner or occupier constructs or installs something on the public sidewalk intended specifically to benefit it. *See Citizens Sav. Bank of Balt. v. Covington*, 199 A. 849, 850–51 (Md. 1938) (holding that defendant could be held liable where it negligently maintained a cellar door to its bank on the public sidewalk abutting its premises that, when lifted, "may be made a trap" to pedestrians); *see also Granville v. New York*, 211 A.D.2d 195, 197–98 (N.Y. App. Div. 1995) (finding that special use doctrine applied where defendant mounted a concrete step on the sidewalk beneath the elevated door of a restaurant).

Plaintiff argues that the Postal Service owed a duty to her and other invitees to inspect the sidewalk area immediately in front of the Post Office and report unsafe conditions. (Opp'n to USA M.S.J. at 5-12, ECF No. 45-1.) However, Plaintiff has made no showing that the Postal Service exercised possession and control of the sidewalk abutting its leased premises such that it may be charged with a duty over the area. The sidewalk was a common area over which SDC retained control and had a duty to maintain under the terms of the lease. *See Shields v. Wagman*, 714 A.2d 881, 884 (Md. 1998) ("[W]here a landlord leases separate portions of his property to different tenants and reserves under his control the passageways and stairways, and other parts of

7

the property for the common use of all the tenants[,] he must then exercise ordinary care and diligence to maintain the retained portions in a reasonably safe condition."). Moreover, the undisputed facts suggest that SDC in fact exercised control over the sidewalk. SDC hired a property management company to inspect the property twice a year, including the sidewalk areas. (USA M.S.J. Ex. A at 81:15-102:18, ECF No. 44-3; Ex. F, ECF No. 44-8; Opp'n to SDC M.S.J. Ex. 5 at 29:1-31:12, ECF No. 46-2.) SDC also had a concrete maintenance contract in place for performing sidewalk repairs through its property management company. (USA M.S.J. Ex. A at 44:14-53:19, 74:5-76:3, ECF No. 44-3; Ex. G, ECF No. 44-9; Ex. H, ECF No. 44-10.)

Although, as Plaintiff points out, the sidewalk area at issue was immediately in front of the Post Office and provided patrons access to it, that alone does not amount to possession and control. *See Catherman v. United States*, Civ. No. ARM-90-576, 1992 WL 175258, at *11 (N.D.N.Y. July 21, 1992) ("The mere fact that defendant's patrons use the entrance for access to its leased space in the building cannot reasonably be asserted as a divestment of the landlord's possession and control of the ... area."). Rather, the Postal Service used the sidewalk in a routine way entirely consistent with its purpose—*i.e.*, to provide access to the businesses in SDC's commercial strip. For this same reason, the Postal Service's use of the sidewalk area does not amount to a "special use" sufficient to impose a duty upon it, even assuming that the "special use" doctrine applies to cases involving privately owned sidewalks. *See Bethesda Armature Co.*, 424 A.2d at 400–01 (holding that the tenant's use of the public walkway abutting its premises was not a "special use" where the walkway "served as nothing more than part of the continuous pedestrian walkway" and "served no special utility to [the tenant] or their customers or suppliers"); *see also Christian v. United States*, 859 F. Supp. 2d 468, 475 (E.D.N.Y. 2012) (holding that, under New York law, the

post office did not make "special use" of the sidewalk abutting its premises where the sidewalk was only used for ingress and egress from the post office).

Plaintiff argues that the Postal Service's failure to inspect and report dangerous conditions in the sidewalk area at issue violated various U.S. Postal Service internal guidelines and handbooks. (*See* Opp'n to USA M.S.J. at 8-10, ECF No. 45-1.) These internal guidelines direct Postal Service employees nationwide to, among other things, conduct regular inspections of their facilities, including the sidewalk areas adjacent to Postal Service facilities. (*See id.*; Exs. 8-9, ECF No. 45-2.) However, these guidelines do not purport to impose legal duties on Postal Service employees to business invitees such that they may be held liable in tort for their violation. *See Ramseur v. United States*, 587 F. Supp. 2d 672, 682 (D. Md. 2007) (holding that, where plaintiff tripped on a mat in a post office, the USPS safety guide that prohibited such a mat placement did not serve to impose liability on the United States because the handbook is only a "reference guide" and "applies to postal employees, not to members of the general public"), *aff'd* 283 F. App'x 998 (4th Cir. 2008); *Doe v. United States*, 718 F.2d 1039, 1041 (11th Cir. 1983) (holding that USPS Supervisor's Safety Handbook and Postal Operations Manual "do not have the force of law" and, therefore, violation of these internal regulations does not support a finding of negligence per se); *see also LeSuer v. United States*, 617 F.2d 1197, 1199 (5th Cir. 1980) (holding that the Army Corps of Engineers' internal safety regulations created no legal duty on the part of the government in FTCA action). Therefore, Plaintiff's reliance on these guidelines and handbooks is unavailing.

Policy considerations also counsel against the imposition of such a duty on the Postal Service. Though factually distinct, the Court of Appeals' discussion in *Langley Park Apartments v. Lund*, 199 A.2d 620 (Md. 1964) reflects the concern that imposing a duty on tenants to maintain common areas in a multi-tenant complex is impractical. There, the Court held that the defendant

landlord had a duty to remove snow from the common walkways to and from its apartment building, reasoning that:

> [t]o expect these tenants to assume the duty of maintaining the common walks would be impractical. Aside from the problem of assigning areas of responsibility ... [w]here would the duty end? Would the tenant also be required to inspect the common stairways and keep them free of substances which might cause injuries?

*Id.* at 623. Similarly, here, the imposition of such a duty on a tenant in SDC's multi-tenant commercial strip would lead to uncertainty with respect to the areas of the sidewalk and other common areas for which each tenant is responsible. The maintenance of the common sidewalk is more efficiently and effectively executed by the landlord on behalf of all who use the strip, rather than by any particular tenant. *See Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 123–24 (3d Cir. 2010) (outlining the policy reasons against the imposition of a duty on tenants in a multi-tenant shopping center over common areas).

In light of these policy considerations and the Postal Service's undisputed lack of control over the sidewalk area at issue, the Court concludes that the Postal Service did not owe Plaintiff a duty with respect to the sidewalk area outside of its leased premises.[3] Alternatively, even if the Postal Service *did* owe a duty to Plaintiff with respect to the sidewalk area at issue, summary

---

[3] Several other courts have reached this same conclusion. *See, e.g., Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 121 & n.4 (3d Cir. 2010) (noting that "the great majority of other jurisdictions ... hold that a lessee in a multi-tenant shopping center does not have a duty to maintain common areas controlled by the landlord"); *McDevitt v. Sportsman's Warehouse, Inc.*, 255 P.3d 1166, 1172–73 (Idaho 2011) (holding that the tenant did not owe its invitees a duty to maintain the sidewalk abutting its business where the sidewalk was a common area owned by the landlord over which the tenant had no control); *Berry v. Houchens Mkt. of Tenn., Inc.*, 253 S.W.3d 141, 146 (Tenn. Ct. App. 2008) (holding that shopping center tenant had no duty to patron who slipped on oil in parking lot where parking lot served multiple tenants and landlord was responsible for its maintenance); *Barrows v. Trs. of Princeton Univ.*, 581 A.2d 913, 915 (N.J. Super. Ct. Law Div. 1990) (holding that commercial tenants in a multi-tenant shopping complex do not have duties to maintain the common sidewalk because such tenants "will not, absent a contractual obligation, have control or maintenance responsibilities for common walkways or sidewalks"); *Johnson v. Tom Thumb Stores, Inc.*, 771 S.W.2d 582, 585 (Tex. Ct. App. 1989) (holding that shopping center tenant was not liable to customer who fell in common area of shopping center ten feet from entrance to tenant's store where landlord was responsible for and had control over the common area).

judgment in the Postal Service's favor is nonetheless appropriate because, as discussed below, the defect here did not pose an unreasonable risk and, further, was open and obvious.

### *b. Breach of Duty*[4]

"The duty owed to an invitee is to use reasonable and ordinary care to keep the premises safe for the invitee and to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety, will not discover." *Casper v. Charles F. Smith & Son, Inc.*, 560 A.2d 1130, 1135 (Md. 1989). An owner or occupier ordinarily has no duty to warn the invitee of open, obvious, and patent dangers. *Id.*

Defendants both argue that the sidewalk defect here was not a dangerous condition that warranted a warning and, even if it was a dangerous condition, Plaintiff nonetheless is not entitled to recover because the defect was open and obvious. (*See* SDC M.S.J. Mem. Supp. at 11-15, ECF No. 43-1; USA M.S.J. Mem. Supp. at 16-20, ECF No. 44-1.) The Court agrees.

#### 1. Dangerous or Defective Condition

Plaintiff argues that the 0.75 inch height differential between the concrete slabs outside the Post Office posed an unreasonable risk of injury. (Opp'n to USA M.S.J. at 13-20, ECF No. 45-1; Opp'n to SDC M.S.J. at 9-15, ECF No. 46-1.) However, courts have found that minor variations in ground surface generally do not amount to unreasonable risks because pedestrians customarily and ordinarily expect to encounter such variations in terrain. *See Schaefer v. United States*, Civ. No. PX-15-02690, 2017 WL 2506174, at *3 (D. Md. June 9, 2017) (holding that a crack in the sidewalk with a depth of 1.5 inches did not pose an unreasonable risk); *Leatherwood Motor Coach Tours*, 579 A.2d at 803 (holding that the uneven ground surface on shoulder of highway posed no

---

[4] Although the Court grants summary judgment in favor of the Postal Service based on the absence of a duty, the Court nonetheless has original jurisdiction over Plaintiff's negligence claim against Defendant SDC. Plaintiff does not explicitly plead diversity jurisdiction in her Complaint, but she alleges facts indicating there is complete diversity among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332.

11

unreasonable risk because pedestrians are bound to protect themselves from comparative roughness of the ground); *see also Christian v. United States*, 859 F. Supp. 2d 468, 476 (E.D.N.Y. 2012) (holding that, under New York law, a 1.25 inch height differential in the sidewalk adjacent to the post office was not a dangerous condition). *Cf. Pierce v. Baltimore*, 151 A.2d 915, 918 (Md. 1959) (holding the defect was not slight or trivial where plaintiff caught his foot under a metal plate covering a drain and the metal plate was raised seven or eight inches above the concrete walls of the drain). It is simply a fact that "pavements will in time become irregular and uneven from roots of trees, heavy rains and snows, or other causes." *Martin v. Mayor & Council of Rockville*, 265 A.2d 241, 244 (Md. 1970) (citations omitted) (holding that the city was not liable for injuries sustained from depression in the concrete "curb apron" connecting the curb and the street that was 4.5 inches wide, 7.0 inches long and no more than 1.5 inches deep).

In support of her argument that the defect here posed an unreasonable risk, Plaintiff offers the testimony of her expert, Lawrence Dinoff, who stated in his deposition that the 0.75 inch height differential between the concrete slabs violated various national standards and model codes. (Opp'n to SDC M.S.J. at 9-14, ECF No. 46-1; Ex. 2 at 108:7-153:2, ECF No. 46-2.) Among others, Dinoff references the standards issued by the American National Standards Institute, the National Fire Protection Association, and the Architectural Barriers Act, all of which require that any rises in level in a walkway higher than 0.25 inch be either beveled, ramped, or repaired and replaced. (Opp'n to USA M.S.J. at 19, ECF No. 45-1.) However, even if Anne Arundel County adopted these standards, their violation is not conclusive evidence that the defect here posed an unreasonable risk for purposes of tort liability. As described by Plaintiff, the standards do not purport to impose duties on owners and occupiers of premises to private parties such that they may be held liable in tort for their violation. Moreover, as Plaintiff herself points out, the existence of

an unreasonable defect "cannot be reduced to a mathematical formula." *President & Com'rs of Town of Princess Anne v. Kelly*, 89 A.2d 594, 596 (Md. 1952); *see also Girdler v. United States*, 923 F. Supp. 2d 168, 190 (D.D.C. 2013) (holding that the uneven sidewalk at issue was not a hazardous condition and noting that the "one-half inch or greater deviation measure provided in the ANSI/ASTM F 1637 guidance, standing alone, is too blunt of a tool for evaluating the existence of a hazardous condition"). Rather, "on the facts in each case, the court should determine whether there is sufficient evidence of the gravity of the alleged defects to permit a jury to consider the question of negligence." *Princess Anne*, 89 A.2d at 596 (citing *Leonard v. Lee*, 62 A.2d 259, 263 (Md. 1948)).

Plaintiff has not made any showing regarding the circumstances of the incident that, along with the 0.75 inch height differential between the concrete slabs, creates a genuine issue of fact for trial. The incident occurred on a sunny day and there was nothing obstructing Plaintiff's view of the uneven sidewalk. (USA M.S.J. Ex. I at 26:2-39:17, ECF No. 44-11.) Plaintiff does not allege that the sidewalk was loose or that there was any substance, such as snow or ice, on it. On these facts, the Court concludes that the 0.75 inch height differential between the concrete slabs in front of the Post Office is the kind of minor defect for which courts have refused to hold property owners liable.

### 2. Open and Obvious Risk

Moreover, even if the sidewalk defect *did* pose an unreasonable risk, Plaintiff nonetheless is not entitled to recover because the undisputed facts demonstrate that the defect was open and obvious. An open and obvious condition is one that is apparent and recognizable to "a reasonable person in the position of a visitor, exercising ordinary perception, intelligence, and judgment." *Coleman v. United States*, 369 F. App'x 459, 462 (4th Cir. 2010) (citing 65A C.J.S. Negligence

§ 639 (2009)). When encountering such conditions, the invitee is responsible for exercising basic care for her own safety, including "a duty to look and see what is around [her]." *Id.* (citing *Tennant v. Shoppers Food Warehouse Md. Corp.*, 693 A.2d 370, 374 (Md. Ct. Spec. App. 1997)). Whether a defect is open and obvious is typically a question reserved for the factfinder. *C & M Builders, LLC v. Strub*, 22 A.3d 867, 885 (Md. 2011). However, "where it is clear that any [reasonable] person [in plaintiff's position] must have understood the danger, the issue may be decided by the court." *Id.* (citing Prosser and Keeton on Torts, § 68 (5th ed. 1984)).

Because "it is common knowledge that small cracks, holes and uneven spots often develop in pavement," courts have consistently held that "where there is nothing to obstruct or interfere with one's ability to see such a static defect, the owner or occupier of the premises is justified in assuming that a visitor will see it and realize the risk involved." *Gellerman v. Shawan Rd. Hotel Ltd. P'ship*, 5 F. Supp. 2d 351, 353 (D. Md. 1998) (internal citations omitted) (holding that the gap between the curb and sidewalk joint that was "seemingly less than one inch" was open and obvious); *see also Schaefer*, 2017 WL 2506174, at *3 (finding that a sidewalk crack with a 1.5 inch gap was open and obvious); *Feldman v. NVR, Inc.*, Civ. No. GJH-14-0672, 2014 WL 6066022, at *4–5 (D Md. Nov. 12, 2014) (holding that a 1-1.5 inch lip between the asphalt road surface and the concrete curb was open and obvious); *Lawrence v. United States*, 679 F. Supp. 2d 820, 827 (E.D. Mich. 2010) (holding that, under Michigan law, a 1.75 inch height differential between two concrete slabs in front of the post office constituted an open and obvious danger).

Plaintiff argues that the sidewalk defect here was not obvious to her because she was not looking down when she exited the Post Office and, even if she had looked down, she would not have recognized the height differential between the sidewalk slabs. (Opp'n to SDC M.S.J. at 15-17; ECF No. 46-1.) Invitees may be excused from observing open and obvious defects in certain

14

circumstances. *See Denbow v. Chesapeake & Potomac Tel. Co.*, 87 A.2d 584, 587–88 (Md. 1952) (denying summary judgment where the plaintiff fell into an open manhole because there was evidence that two people guarding the manhole distracted plaintiff, one stepping in his way and forcing him to change course into the manhole's direction); *Mayor of Balt. v. Grossfeld*, 195 A. 554, 555–56 (Md. 1937) (denying summary judgment because there was evidence that the defect that caused the accident was not observable but was a latent soft spot underneath the sidewalk). Those circumstances do not exist here. There was nothing obstructing Plaintiff's view of the sidewalk. (USA M.S.J. Ex. I at 39:7-39:17, ECF No. 44-11.) The incident occurred sometime in the morning on a sunny summer day. (*Id.* at 20:9-26:5.) Plaintiff did not present any evidence that there was something unexpected or beyond the miscellany of normal activity so as to excuse her failure to observe the sidewalk defect. *See Sampson v. United States*, Civ. No. DKC-15-0243, 2017 WL 3022971, at *6 (D. Md. July 17, 2017) (holding that plaintiff's failure to observe a lip between sidewalk panels because she was looking straight ahead and other pedestrians were blocking her view of certain portions of the ground was not excusable); *Gellerman*, 5 F. Supp. 2d at 353 (finding that moving vehicles in a parking lot were an expected distraction that does not excuse a failure to see a gap at the curb). Moreover, two of Plaintiff's employees, Kim Goins and Karen Stelmack, stated in their depositions that they had each noticed the sidewalk defect during their prior visits to the Post Office. (USA M.S.J. Ex. N at 13:2-13:19, ECF No. 44-16; Ex. O at 10:24-11:20, ECF No. 44-17.) Indeed, Stelmack even stated that she was able to observe the "difference in level" in the sidewalk when she exited the Post Office—further supporting the conclusion that the defect was open and obvious and that Plaintiff would have noticed the defect had she exercised ordinary care. (USA M.S.J. Ex. O at 19:4-19:20, ECF No. 44-17.)

Plaintiff's reliance on *President & Com'rs of Town of Princess Anne v. Kelly*, 89 A.2d 594 (Md. 1952) to oppose summary judgment is unavailing. There, the Court of Appeals of Maryland held that the issue of contributory negligence was a question for the jury where the plaintiff fell after stepping into a hole in the sidewalk that was three feet wide and had an average depth of 0.5 inches and a maximum depth of 1.75 inches. *Id.* at 594, 597. This defect does not constitute a minor deviation in ground surface analogous to the 0.75 inch height differential between the two concrete slabs here. The Court in *Princess Anne* also noted that, unlike here, there was evidence from which the jury could find that the depression was not plainly visible. *Id.* at 597.

The Court concludes that, as a matter of law, a reasonable person in Plaintiff's position exercising ordinary perception and care would have recognized the condition and the risks of the uneven intersection between the concrete slabs. The open and obvious doctrine imposes a duty on a plaintiff to exercise due care for her own safety. In this instance, that duty required Plaintiff to account for visible defects in ground surface. Because she failed to do so, all Defendants are entitled to judgment as a matter of law.

### IV. Conclusion

For the foregoing reasons, the Court grants Defendants' Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

DATED this 6 day of December, 2018.

BY THE COURT:

_____
James K. Bredar
Chief Judge